FILED
2021 Sep-29  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION
CIVIL DIVISION

| | | |
|---|---|---|
| JORETHA MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:21-cv-01126-CLM |
| | ) | |
| BILLY J. MURRAY, ST. CLAIR | ) | **JURY TRIAL DEMANDED** |
| COUNTY SHERIFF (in his official | ) | |
| capacity), | ) | |
| and PAUL MONK, PHILLIP | ) | |
| BARNARD and JOHN KITCHENS | ) | |
| (in their individual capacities), | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

**COMES NOW** Plaintiff Joretha Mitchell (hereinafter "Plaintiff") by and through undersigned counsel, hereby brings this action against St. Clair County Sheriff (hereinafter "Defendant employer"), Paul Monk, (white male), (hereinafter "Chief Monk"), Phillip Barnard (white male), (hereinafter "Sergeant Barnard" and John Kitchens (white male), (hereinafter "Captain Kitchens"). In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge and information and belief that all facts alleged herein have evidentiary support or will likely have evidentiary support upon further investigation or discovery:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e et. seq.

2. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff is an adult Black female of more than nineteen (19) years of age. She is a resident of the State of Alabama and this judicial district. She was an employee of the St. Clair County Sheriff at all times relevant to this action.

4. Defendant employer operates in Alabama. Plaintiff worked for Defendant employer at all times material herein. Defendant employer meets the jurisdictional prerequisites of Title VII and 42 U.S.C. § 1981.

5. Defendant Chief Monk was the Jail Administrator within the supervisory chain of command of Plaintiff and was so employed by the St. Clair County Sheriff at all times relevant to this action.

6. Defendant Sergeant Barnard was within the supervisory chain of command of Plaintiff and so employed by the St. Clair County Sheriff at all times relevant to this action.

7. Defendant Captain Kitchens was within the supervisory chain of command of Plaintiff and so employed by the St. Clair County Sheriff at all times relevant to this action.

## STATEMENT OF FACTS

8. Plaintiff began working as a corrections officer for Defendant employer in Alabama in 2000.

9. Plaintiff has been discriminated against on the basis of her race and sex beginning in 2007 and continuing.

10. Plaintiff requested a transfer on or around February 6, 2007 due to harassment from her supervisor at the time. Specifically, Plaintiff's supervisor referred to her as a "bitch" in front of two other employees and informed another co-worker that he wanted to write Plaintiff up for no reason.

11. Captain Shirley Smith (white female), (hereinafter "Captain Smith"), Administrative Captain Tracie Wright (white female), (hereinafter "Captain

Wright") and Chief Austin Nash (white male), (hereinafter "Chief Nash") would introduce Plaintiff as "Bitch Mitchell" to new and potential employees in interviews.

12.  On several occasions throughout Plaintiff's tenure with Defendant employer, officers referred to Plaintiff as a "bitch" or having a "bitchy attitude," complained about her tone of voice and discussed their opinions about Plaintiff as well as Plaintiff's personal matters, such as the death of her son and her divorce, with inmates promoting a hostile work environment.

13. Plaintiff was excluded and/or isolated by co-workers. This was achieved by officers, supervisors and captains who primed staff to dislike Plaintiff, for example, introducing Plaintiff as "Bitch Mitchell" to new and potential employees; officers instigating and gathering complaints against Plaintiff with the intention to have her removed while Plaintiff's superiors failed to acknowledge that these complaints were false; and when co-workers invaded her privacy and shared personal information with other coworkers and inmates creating a hostile work environment.

14. Defendant employer discriminated against Plaintiff on the basis of her race when Defendant employer disregarded its policy and Plaintiff's seniority, experience and qualifications by failing to promote her as the most senior

experienced and qualified candidate for several Captain or Acting Captain positions.

15. In November 2014, Captain Myrtis Moss (black female), (hereinafter "Captain Moss") became very ill. Captain Moss retired in September 2015. An acting Captain was not put in place during her medical leave of absence for nearly a year even though Plaintiff did the majority of the work as Captain with no pay increase or official title at the same time she was executing her own job duties.

16. By contrast in August 2015, Captain Wright had taken personal leave for only three months at which time Chief Nash requested an Acting Administrator be appointed. The County Commission approved that request, and Chief Nash appointed Captain Amber Hamilton (white female) (hereinafter "Captain Hamilton") as Acting Captain. Captain Hamilton was far less experienced than Plaintiff when she was appointed as Acting Captain, though Plaintiff was never appointed as Acting Captain during the nearly year long medical leave that Captain Moss took.

17. In 2016, instead of promoting Plaintiff, who had been completing the previous Captains' duties while the position was vacant during Captain Moss' absence, Defendant employer offered the position to a, white male

employee, John Kitchens. Again in 2020, Defendant employer placed an unqualified white employee, Captain Hamilton, in the open Captain's position, failing to again promote Plaintiff despite being the highest ranked and most qualified for the position.

18. On September 5, 2017, Captain Smith was put on personal leave; when Plaintiff came to work that day, there was a memo stating Phyllis Farmer (white female) "was in charge. At the time that Farmer was made Acting Captain, she had only 10 years experience compared to Plaintiff's 18 years of experience.

19. In June 2018 Plaintiff applied for a position at the St. Clair County Juvenile Detention Center; however, she was passed over for someone who had no jail experience and was later discovered to be Peggy Watson, Chief Watson's wife.

20. During the course of Plaintiff's shift on or around February 3, 2016, Captain Smith expressed to Plaintiff that this was her (Captain Smith's) jail and what she says goes, telling Plaintiff that because she was from Ashville she knows people naming specifically Plaintiff's step-brother. After a discussion with Chief Nash regarding how the jail Captain and supervisor need to work together, Captain Smith started making threats toward Plaintiff.

21. In March of 2016, an inmate who had previously threatened Plaintiff (stating in detail that he would rape her, peform other sexual acts, and then kill her) was transferred from the Pell City jail to the Ashville jail, where Plaintiff was currently working. It was explained to Plaintiff that the reason for the transfer was because the inmate had threatened to spit on and beat up a white officer. Instead of locking the inmate down at his current facility, he was transferred to Plaintiff's location despite her complaints that he had threatened to do worse things to her than the white officer.

22. In 2019, Plaintiff's safety was also disregarded when Captain Smith allowed an inmate to go into the property room and remove items seized upon booking at the jail. This inmate, who had previously threatened Plaintiff, removed a knife from her belongings. Not only is this extremely dangerous to anyone in the facility, this is an offense that warrants discipline, if not termination, and Captain Smith received neither.

23. Officers invaded Plaintiff's privacy by sharing Plaintiff's personal information with inmates. Specifically, information about the death of her son and her divorce were discussed with inmates by coworkers. When Plaintiff expressed to her superiors that an inmate had personal information relating to her son's death, Chief Watson and Chief Nash told Plaintiff to let

it go and did not investigate the incident at all. The sharing and discussing of Plaintiff's personal information continued.

24.   Plaintiff has been retaliated against after engaging in protected activity when she expressed concerns of disparate treatment and discrimination to the members in her chain of command which included Chief Greg Watson (white male), (hereinafter "Chief Watson"), Captain Wright, Chief Nash, Captain Hamilton, Chief Monk, Sergeant Barnard, and Captain Kitchens.

25.  Plaintiff was called into the office on or around 2016 due to complaints from coworkers regarding her tone of voice and for expecting them to adhere closely to the rules. When asked why these complaints were occurring, Plaintiff expressed her concerns to Chief Nash and Captain Wright that she was being targeted and treated differently because she is a strong Black woman. Nothing was done to address her concerns of discrimination, and in fact the insubordination and culture of disrespect and undermined authority continued and worsened.

26.  After a supervisory meeting in July 2018, Chief Watson asked Plaintiff to stay after and addressed her about complaints from coworkers about her tone of voice and other complaints and asked her why everyone was so against her. With Captain Wright present, considering that her previous complaints

of discrimination had gone unaddressed, Plaintiff repeatedly asked Watson, "Do you really want to know?" When Watson replied in the affirmative, she again expressed her concerns that she was being treated differently because she is a Black female. After this complaint, the discrimination on the basis of her race and sex worsened. This complaint again went uninvestigated, unaddressed, unremedied, and the discriminatory conduct continued and worsened.

27. In 2020, when Plaintiff expressed to Chief Monk that she was being treated differently because she is a Black female, his response was "so you're going to play the race card?" This complaint to a third chief also went unaddressed, and the discrimination continued and worsened, even to the point of termination.

28. In July 2020, Plaintiff met with Chief Monk, Captain Hamilton and Sergeant Barnard to discuss that the officers on Plaintiff's shift do not respect her and how these officers have stated that she is not their supervisor, and that they take their orders from Supervisor Marty Gaston (white male), (hereinafter "Supervisor Gaston"). Nothing was done to address these complaints.

29.  On August 7, 2020, Officer Noah Bruce (white male), (hereinafter "Officer Bruce") requested to be moved to third shift and when Plaintiff spoke up that it would be great to be working with him, he replied "I've heard the horror stories."

30.  While working with Defendant employer, the Sheriff specifically requested that Plaintiff voluntarily be transferred so that she could help train new employees. Plaintiff asked that in the event that she was transferred again she would remain on the first shift due to the fact any other shift would cause an issue with childcare. Plaintiff was assured by Captain Wright and Chief Watson that her shift would not change. However, despite her superiors' assurance she was put on the 2nd shift and was told she could (1) stop complaining and stay on the second shift, (2) take a demotion from supervisor to officer to move to the first shift or (3) quit.  Officer Ashley Cain (white female), (hereinafter "Officer Cain") was placed on first shift.

31. Plaintiff was the target of false complaints from her coworkers and inmates as well as her superiors who on several occasions proposed and administered disciplinary action without proper investigation.

32. Officers encouraged inmates and other officers to file grievances against Plaintiff in efforts to have Plaintiff removed from her position. Specifically,

Officer Nicholas Adams (white male), (hereinafter "Officer Adams") and Officer Wayne Thompson (white male), (hereinafter "Officer Thompson") sought out individuals to write statements against Plaintiff. Officer Thompson advised each individual on what to include in these statements. On another occasion Officer Farmer advised inmates to pursue Prison Rape Elimination Act (hereinafter refered to as "PREA") complaints against Plaintiff despite having records that the information in the complaints was false.

33. On August 7, 2020, Officer Noah Bruce (white male), (hereinafter "Officer Bruce") requested to be moved to third shift and when Plaintiff spoke up that it would be great to be working with him, he replied "I've heard the horror stories."

34. On or around August 11, 2020, Plaintiff was called into Chief Monk's office where Sergeant Bernard, Captain Hamilton and Captain Kitchens were all present. Plaintiff was falsely accused of hiding keys without any investigation and terminated for failure to follow firewatch protocols.

35. Plaintiff's employment with Defendant employer was terminated without due process, on the first offense, without proper use of the Defendant employer's progressive discipline policy and without any notice that the

offense she allegedly committed was in fact current policy, specifically fire watch procedure.

## CAUSES OF ACTION

## I.   TITLE VII

### A. Exhaustion of Administrative Remedies

36. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"), which provides relief against race and sex discrimination and retaliation.

37. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff filed her charge with the Equal Employment Opportunity Commission (the "EEOC") on September 18, 2020 (amended on May 4, 2021), and that agency has now issued a notice of right to sue on May 19, 2021 following its investigation of Plaintiff's claims. Exhibit A. Plaintiff now files her Complaint within 90 days of her receipt of said Notice, and has therefore exhausted all administrative remedies.

38. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, (hereinafter "Title VII") makes it

unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . .[or] sex."

39. Plaintiff brings this suit within the applicable statute of limitations and presents facts of prior discriminatory acts to provide relevant background evidence of a pattern of discrimination against Plaintiff by Defendant employer.

### B. Count I - Race Discrimination

40. Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

41. Plaintiff has been discriminated against on the basis of her race (Black) beginning in 2007 and continuing.

42. Defendant employer has not terminated white employees without proper use of the progressive discipline policy and procedures for offenses that warrant use of progressive discipline during the time period relevant to these claims.

43. Defendant employer has not terminated white employees for failure to utilize the fire watch log procedures, specifically Officer Stinson, during the time period relevant to these claims.

44. Defendant employer has not falsely accused white employees of misconduct and failed to investigate false accusations as it relates to the accused misconduct that is the basis of these claims.

45. Plaintiff's employment was terminated by Defendant employer and their agents because of her race.

46. All of the above discriminatory actions in violation of Title VII were taken under the supervision of Defendant employer. Defendant employer allowed the unlawful discriminatory behavior and termination on the basis of race and sex to go unremedied, allowing an atmosphere of race discrimination as an acceptable employment practice.

47. As a result of the willful actions of the Defendant employer and its agents, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity.

### C. Count II - Sex Discrimination

48. Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

49. Plaintiff has been discriminated against on the basis of her sex (female) beginning in 2007 and continuing.

50. Plaintiff's employment was terminated by Defendant employer and their agents because of her sex.

51. Plaintiff was repeatedly and continuously referred to as "bitch" and "bitch Mitchell" by her fellow coworkers and superiors.

52. Defendant employer threatened to demote Plaintiff after her shift was changed from first shift to second shift despite being assured she would remain on first shift if she voluntarily relocated again. Plaintiff needed to be on the first shift because she had an eleven year old daughter at home; regardless, Chief Watson told Plaintiff to stop complaining, take a demotion, or quit.

53. All of the above discriminatory actions in violation of Title VII were taken under the supervision of Defendant employer. Defendant employer allowed the unlawful discriminatory behavior and termination on the basis of sex to go unremedied, allowing an atmosphere of sex discrimination as an acceptable employment practice.

54. As a result of the willful actions of the Defendant employer and its agents, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity.

### D. Count III - Retaliation on the basis of Race

55. Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

56. Plaintiff has been retaliated against after engaging in protected activity - expressing concerns of disparate treatment to the members in her chain of command which includes Chief Monk, Sergeant Barnard, Captain Hamilton and Captain Kitchens.

57. Plaintiff specifically told Captain Wright, Chief Nash and Chief Watson that she was being treated differently because she is a Black female. Nothing was done to address her concerns.

58. When Plaintiff expressed to Chief Monk that she was being treated differently because she is a Black female, his response was "so you're going to play the race card?"

59. Plaintiff's concerns were disregarded by Defendant employer and its agents and after expressing her concerns again to Chief Watson in 2019, the treatment worsened.

60. When coworkers would make false claims, Plaintiff's supervisors failed to investigate these claims, and instead Plaintiff, on multiple occasions, was confronted with proposed discipline. Plaintiff had to request an investigation be conducted and after the allegations were proven to be false, Defendant

employer failed to propose or administer discipline to the appropriate employee(s).

61. Defendant employer was aware that Plaintiff was the target of false reports and her concerns of dsicrimination; however, nothing was done to remedy these issues and Defendant employer allowed Plaintiff to continue to be subjected to race discrimination in the workplace.

62. Defendant employer terminated Plaintiff on the basis of her race. Plaintiff's termination as well as the proposed discipline for false reports and failed investigations came after Plaintiff engaged in protected activity creating a causal link.

63. As a result of the willful actions of the Defendant employer and its agents, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity.

### E. Count IV - Retaliation on the basis of Sex

64. Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

65. Plaintiff has been retaliated against after engaging in protected activity - expressing concerns of disparate treatment to the members in her chain of

command which includes Chief Monk, Sergeant Barnard, Captain Hamilton and Captain Kitchens.

66. Plaintiff specifically told Captain Wright, Chief Nash and Chief Watson that she was being treated differently because she is a Black female. Nothing was done to address her concerns. After expressing her concerns to Chief Watson in 2019, the treatment worsened.

67. When coworkers would make false claims, Plaintiff's supervisors failed to investigate these claims, and instead Plaintiff, on multiple occasions, was confronted with proposed discipline. Plaintiff had to request an investigation be conducted and after the allegations were proven to be false, Defendant employer failed to propose or administer discipline to the appropriate employee(s).

68. Defendant employer was aware that Plaintiff was the target of false reports after her concerns of dsicrimination; however, nothing was done to remedy these issues and Defendant employer allowed Plaintiff to continue to be subjected to sex discrimination in the workplace.

69. Defendant employer terminated Plaintiff on the basis of her sex.  Plaintiff's termination as well as the proposed discipline for false reports and failed

investigations came after Plaintiff engaged in protected activity creating a causal link.

70. As a result of the willful actions of the Defendant employer and its agents, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity.

### F. Count V - Hostile Work Environment on the basis of Race

71. Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

72. "Pursuant to the 2000e-2(a)(1) prohibition, when the workplace is permeated by discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of a victim's employment and to create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

73. Defendant Employer created and cultivated an unwelcomed hostile work environment when it allowed Plaintiff to be the subject of ongoing race discrimination.

74. Plaintiff was subjected to a hostile work environment on the basis of her race (Black) when she became the target of unwarranted proposed discipline

and false reports by coworkers and inmates in hopes to have her removed from her position.

75. Plaintiff's personal information was shared with coworkers and inmates which further created a hostile work environment.

76. Defendant employer failed to remedy these issues despite Plaintiff's reporting and requesting that the allegations be investigated.

77. This failure on the part of Plaintiff's supervisory chain of command led to a hostile work environment emboldening Plaintiff's fellow coworkers and subordinates to continue the behavior for which Plaintiff complained.

78. As a result of the willful actions of the Defendant employer and its agents, and as a proximate cause thereof, Plaintiff has been subjected to a hostile work environment on the basis of her race.

**G. Count VI - Hostile Work Environment on the Basis of Sex**

79. Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

80. "Pursuant to the 2000e-2(a)(1) prohibition, when the workplace is permeated by discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of a victim's

employment and to create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

81. Defendant Employer created and cultivated an unwlecomed hostile work environment when it allowed Plaintiff to be the subject of ongoing sex discrimination.

82. Plaintiff was subjected to a hostile work environment on the basis of her sex when coworkers and her superiors introduced and referred to Plaintiff as "bitch" and "bitch Mitchell" for so long and so often that employees who had never worked with Plaintiff had animosity towards her.

83. Plaintiff was subjected to a hostile work environment on the basis of her sex when she became the target of unwarranted proposed discipline and false reports by coworkers and inmates in hopes to have her removed from her position.

84. Plaintiff's personal information was shared with coworkers and inmates which further created a hostile work environment.

85. Defendant employer failed to remedy these issues despite Plaintiff's reporting and requesting that the allegations be investigated.

86. This failure on the part of Plaintiff's supervisory chain of command led to a hostile work environment emboldening Plaintiff's fellow coworkers and subordinates to continue the behavior for which Plaintiff complained.

87. As a result of the willful actions of the Defendant employer and its agents, and as a proximate cause thereof, Plaintiff has been subjected to a hostile work environment on the basis of her sex.

**H. Count VII-Retaliatory Hostile Work Environment**

88. Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

89. Under 42 U.S.C. § 2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice" by title VII.

90. Title VII prohibits the creation of a hostile work environment or harassment in retaliation for an employee's protected activity. *Monaghan v. Worldpay U.S. Inc.*, 955 F.3d 855, 861 (11th Cir. 2020).

91. Plaintiff has been retaliated against after engaging in protected activity - expressing concerns of disparate treatment to the members in her chain of

command which includes Chief Monk, Sergeant Barnard, Captain Hamilton and Captain Kitchens.

92. Plaintiff specifically told Captain Wright, Chief Nash and Chief Watson that she was being treated differently because she is a Black female. Nothing was done to address her concerns.

93. When Plaintiff expressed to Chief Monk that she was being treated differently because she is a Black female, his response was "so you're going to play the race card?"

94. Plaintiff's concerns were disregarded by Defendant employer and its agents and after expressing her concerns again to Chief Watson in 2019, the treatment worsened.

95. Plaintiff's became the subject of false reports by coworkers and inmates in the attempt to have her removed from her position.

96. These false reports were instigated by her coworkers and accepted as true by her supervisors and Plaintiff would become the subject of proposed discipline.

97. Upon investigation, at Plaintiff's request, it was discovered that the reports were false or reported incorrectly.

98. Plaintiff's subordinate officers disregarded her commands as their supervisor specifically stating that their supervisor was Supervisor Gaston who is a white male.

99. Plaintiff's superiors failed to adequately address concerns with the chain of command pertaining to Plaintiff and the subordinate officers even after she expressed concerns that she was being treated differently because she was a Black female.

100. Defendant employer was aware of Plaintiff's protected activity but disregarded her concerns and allowed the harassment to continue.

101. As a result of the willful actions of the Defendant employer and its agents, and as a proximate cause thereof, Plaintiff has been subjected to a retaliatory hostile work environment meant to dissuade her and other employees from complaining of discrimination.

## II.   Count VIII - 42 U.S.C. § 1981

102. Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

103. Plaintiff also brings this suit pursuant to 42 U.S.C. § 1981 as amended by Section 101 of the Civil Rights Act 1991 which prohibits "all racial discrimination in the making and enforcement of contract" to include

intentional discrimintaton as it pertains to the terms and conditons of employment.

104. Plaintiff brings this suit within the applicable statute of limitations under 42 U.S.C § 1981 and presents facts of prior discriminatory acts to provide relevant background evidence of a pattern of discrimination against Plaintiff by Defendant employer.

105. Defendant employer intentionally discriminated against Plaintiff on the basis of her race when (1) Plaintiff was denied promotions that were given to white candidates, despite Defendant employer's policy and Plaintiff being more qualified, experienced and the highest ranking official; (2) agents of Defendant employer created scenarios and falsely accused Plaintiff with the intention of having her fired or transferred; (3) Defendant employer failed to properly investigate these baseless claims; (4) Defendant employer terminated Plaintiff's employment without following progressive discipline; and (5) Defendant employer failed to administer appropriate disciplinary actions to white employees for the same situation for which Defendant employer accused and proposed discipline for Plaintiff.

106. Specifically, on April 26, 2017 Defendant employer accused Plaintiff and planned to administer discipline. Plaintiff requested the issue be properly

investigated and the video surveillance reviewed. Upon review, it was discovered that Officer Butts and Officer Palmer actually committed the offense, neither of whom received any discipline.

107.  Plaintiff was excluded and/or isolated by co-workers. This was achieved by officers, supervisors and captains who primed staff to dislike Plaintiff, for example, introducing Plaintiff as "Bitch Mitchell" to new and potential employees; officers instigating and gathering complaints against Plaintiff with the intention to have her removed while Plaintiff's superiors failed to acknowledge that these complaints were false; and when co-workers invaded her privacy and shared personal information with other coworkers and inmates creating a hostile work environment.

108.  Plaintiff was intentionally discriminated against and subjected to scenarios where race was a factor. Specifically, Black inmates, even those who had previously threatened Plaintiff's life, were transferred to the facility where Plaintiff was located at the time, and when Officer Strancer placed hair (dread locs), from a Black inmate, in a bag and hung it in the control room with a note that said "this is why women should wear their hair up."

109.   On another occasion, Plaintiff and Officer Andrew Thomas (male) (hereinafter "Officer Thomas") witnessed Officer Adams speaking about Plaintiff in a derogatory way to inmates while on kitchen duty.

110.   Plaintiff was the only supervisor targeted by other white employees, denied promotions based on her race and terminated without proper use of disciplinary procedure during all times relevant to these claims.

111.   Defendant Employer allowed Plaintiff's superiors and coworkers to target Plaintiff, intentionally discriminating against her on the basis of her race.

112.   Defendant employer allowed situations to continue and go unremedied that targeted Plaintiff, intentionally discriminating against her on the basis of her race.

113.   As a result of the willful actions of the Defendant employer and its agents, and as a proximate cause thereof, Plaintiff has been intentionally discriminated against on the basis of her race and continues to be denied her equal rights as provided to her white coworkers.

## III.   Count IX - 42 U.S.C § 1983

114.   Plaintiff adopts and re-alleges all paragraphs set forth above as if fully set forth herein.

115.   This suit is authorized and instituted by 42 U.S.C. § 1983 which states "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

116.   Plaintiff brings this suit within the applicable statute of limitations provided by Ala. Code § 6-2-38 and presents facts of prior discriminatory acts to provide relevant background evidence of a pattern of discrimination.

117.   42 U.S.C. § 1983 provides a vehicle in suits against individual officers acting under color of state law and abrogates their Eleventh Amendment immunity in personal capacity suits for intentional discrimination pursuant to 42 U.S.C § 1981.

118.   Plaintiff brings this suit under 42 U.S.C § 1981 though 42 U.S.C. § 1983, against employees of Defendant employer in their **individual capacities** for their personal participation and causal connection to the violation of

Plaintiff's constitutional rights under the Equal Protection Clause of the 14th Amendment of the United States Constitution.

119.   Plaintiff brings this action under 42 U.S.C. § 1983 against Chief Monk, Sergeant Barnard and Captain Kitchens in their individual capacities, each of whom, acting under the color of state law - using the authority given to him or her by the local and state government agency - violated Plaintiff's Constitutional Rights under the Equal Protection Clause of the 14th Amendment.

120.   There is a causal connection between each of the above named individuals actions and the violation of Plaintiff's constitutional rights.

121.   Each of the above named individuals personally participated in violating Plaintiff's constitutional rights.

122.   Under Defendant employer's policy and chain of command structure, Chief Monk is a decision maker with final authority to discipline and terminate Plaintiff.

123.   Under Defendant employer's policy and chain of command structure, Sergeant Barnard is a decision maker with the authority to discipline and propose termination for Plaintiff.

124.   Under Defendant employer's policy and chain of command structure, Captain Kitchens is a decision maker with the authority to discipline and propose termination for Plaintiff.

125.   Chief Monk violated Plaintiff's Constitutional Rights when he (1) failed to properly investigate false claims made against Plaintiff by Captains, Officers, and inmates under his command; (2) discriminated in promotional practices disregarding Plaintiff's seniority, qualifications, experience and Defendant employer's policy when promoting white employees, on two separate occasions, to the Captain position; (3) failed to address Plaintiff's complaints of being disrespected by subordinates; (4) promoted and allowed disrespectful behavior by subordinates and inmates by failing to mitigate the issues raised in Plaintiff's complaints; and (5) ultimately terminated Plaintiff's employment on a  pretextual basis.

126.   Sergeant Barnard violated Plaintiff's Constitutional Rights when he (1) failed to properly investigate false claims made against Plaintiff by Captains, Officers, and inmates under his command; (2) instigated disciplinary actions against Plaintiff in hopes to have her removed from her position; (3) failed to address Plaintiff's complaints of being disrespected by subordinates; (4) promoted and allowed disrespectful behavior by subordinates and inmates

by failing to mitigate the issues raised in Plaintiff's complaints; and (5) recommended Plaintiff's employment be terminated on a pretextual basis.

127.   Captain Kitchens violated Plaintiff's Constitutional Rights when he (1) failed to properly investigate false claims made against Plaintiff by Officers and inmates under his command, (2) discriminated in practices, statements and actions toward Plaintiff on the basis of race and sex, (3) participated in the instigation of false complaints lodged against Plaintiff by Officers under his command; (4) promoted and allowed disrespectful behavior by subordinates and inmates by failing to mitigate the issues raised in Plaintiff's complaints; and (5) participated in the termination of Plaintiff's employment on a pretextual basis.

128.   Plaintiff sets forth comparators - white officers and supervisors within the same supervisory chain of command - who were treated more favorably.

129.   At the time Captain positions became available, Plaintiff was the most qualified and highest ranking officer. Per Defendant employer's policy, Plaintiff was the appropriate candidate for the position. Instead, these positions were offered to less qualified white employees - Kitchens and Hamilton.

130.   Additionally, Chief Monk, Sergeant Barnard and Captain Kitchens failed to follow Defendant employer's progressive discipline policy and failed to administer appropriate disciplinary actions for white officers in violation of Defendant employer's policies during the time period relevant to these claims.

131.   Specifically, Supervisor Farmer, who held the same position as Plaintiff, allowed an inmate to use her county cell phone to speak with the Captain which is terminable on the first offense. Supervisor Farmer received no discipline in relation to these policy violations.

132.   A white female officer, who was or may still be dating Captain Kitchens, was investigated for assaulting an inmate. The investigation confirmed the inmate's complaint; however, the officer was not terminated.

133.   Plaintiff was terminated without any progressive discipline for allegedly violating fire watch protocols. However, Officer Stinson (white male) violated fire watch protocol and received no discipline much less termination for this offense, though he was subsequently terminated for a different offense.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court award declaratory and injunctive relief, pre-judgment interest, attorneys' fees, costs, compensatory damages, lost employment benefits and wages, back pay, front pay, interest, punitive damages, and such other legal or equitable relief to which Plaintiff may be entitled against all Defendants as authorized by Title VII and 42 U.S.C §§ 1981 and 1983.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON
ALL CLAIMS SO TRIABLE.**

Joretha Mitchell

State of Alabama                          )
County of Jefferson                      )

 I, the undersigned a Notary Public in and for said County and State, hereby certify that Joretha Mitchell, whose name is signed to the foregoing instrument, did swear to and ascribe as true contents of the Complaint before me on this day that, being informed of the contents of the instrument, executed the same voluntarily on the day that same bears date.

 Given under my hand this the  29th  day of September 2021.

Notary Public
Commission Expires: 02/04/2025

Respectfully submitted,

/s/ Lauren H. Shine
Lauren H. Shine
Attorney for Plaintiff
SHINE LAW FIRM, LLC
PO Box 13877
Birmingham, AL 35202
shinelawal@gmail.com
(205) 847-4804

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the <u>29th</u> day of September, 2021, a true and correct copy of the foregoing has been served via the Court's CM/ECF filing system upon counsel of record as follows:

Ashley H. Freeman, Esq.
C. Richard Hill, Jr., Esq.
ashley.freeman@chlaw.com
rick.hill@chlaw.com
CAPELL & HOWARD, P.C.
150 South Perry Street
P.O. Box 2069
Montgomery, AL 36102

/s/ Lauren H. Shine
Of Counsel