FILED
2022 Apr-22  PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION
CIVIL DIVISION

| | | |
|---|---|---|
| JORETHA MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:21-cv-01126-CLM |
| | ) | |
| BILLY J. MURRAY, ST. CLAIR | ) | **JURY TRIAL DEMANDED** |
| COUNTY SHERIFF (in his official | ) | |
| capacity), | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND AMENDED COMPLAINT

**COMES NOW** Plaintiff Joretha Mitchell (hereinafter "Plaintiff") by and through undersigned counsel, hereby brings this action against St. Clair County Sheriff (hereinafter "Defendant"). In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge and information and belief that all facts alleged herein have evidentiary support or will likely have evidentiary support upon further investigation or discovery:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e et. seq.

2. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff is an adult Black female of more than nineteen (19) years of age. She is a resident of the State of Alabama and this judicial district. She was an employee of the St. Clair County Sheriff at all times relevant to this action.

4. Defendant operates in Alabama. Plaintiff worked for Defendant at all times material herein. Defendant meets the jurisdictional prerequisites of Title VII.

5. Defendant meets the jurisdictional prerequisites of 42 U.S.C. § 1981.

6. Defendant employs fifteen (15) or more employees as required by Title VII.

## STATEMENT OF FACTS

7. Plaintiff began working as a corrections officer for Defendant in this judicial district in 2000.

## DISPARATE TREATMENT AND HOSTILE ENVIRONMENT

8. On or around **February 6, 2007,** Plaintiff requested a transfer from Myrtis Moss, Black female, (hereinafter "Captain Moss"), after Plaintiff's

supervisor David Messer, white male, (hereinafter "Officer Messer"), called her a "bitch" and later told Plaintiff's coworker Lamon Childers, Asian female, (hereinafter "Childers") that he would not write Childers up for an infraction that he found out Childers had committed because he wished that it had been Plaintiff so that he would have a reason to write Plaintiff up.

9. On or around **2008**, Plaintiff was working in the control room when Captain Moss told her to calm down and change her tone when answering the phone, even though other officers could answer the phone in any tone they wished. Captain Moss called Plaintiff a "bitch" in front of three other employees, Traci Wright, white female, (hereinafter "Officer Wright), Naomi Bowie, Black female, (hereinafter "Bowie"), and Marty Gaston, white male, (hereinafter "Officer Gaston"). Officer Wright reported the incident to Terry Marcrum, white male, (hereinafter "Chief Marcrum"), who then verified the incident with Plaintiff who also reported it. Plaintiff wrote a statement about this incident at Chief Marcrum's request.

10. From roughly **2014** through **2016** Administrative Captain Tracie Wright (hereinafter "Captain Wright") and Austin Nash, white male, (hereinafter "Chief Nash") would introduce Plaintiff as "bitch Mitchell" to new and potential employees in interviews. Shirley Smith, white female, (hereinafter

"Captain Smith"), regularly referred to Plaintiff as a "bitch," when talking to coworkers and inmates. Plaintiff reported this to Chief Nash, and nothing was done about it.

11. Plaintiff was referred to as "bitch Mitchell," "the bitch" or "the witch" consistently between roughly **2014** through **2016.** On several occasions throughout Plaintiff's tenure with Defendant, officers and supervisors including but not limited to Phyliss Farmer, white female, (hereinafter "Supervisor Farmer"), Wayne Thompson, white male, (hereinafter "Officer Thompson'") and Nicholas Adams, white male, (hereinafter "Officer Adams") referred to Plaintiff as a "bitch" or having a "bitchy attitude," complained about her tone of voice and discussed their opinions about Plaintiff as well as Plaintiff's personal matters, such as the death of her son (beginning in **2014**) and her divorce (beginning in **2010)**, with inmates which created a hostile work environment. When Plaintiff expressed to her superiors that an inmate had personal information relating to her son's death, Greg Watson, white male, (hereinafter "Chief Watson") and Chief Nash told Plaintiff to let it go and did not investigate the incident at all. The sharing and discussing of Plaintiff's personal information continued.

12. During the course of Plaintiff's shift on or around **February 3, 2016**, after a discussion with Chief Nash regarding how the jail Captain and supervisor need to work together, Captain Smith raised her radio up towards Plaintiff and started making threats toward Plaintiff. Captain Smith expressed to Plaintiff that this was her (Captain Smith's) jail and what she says goes, telling Plaintiff that she knows where Plaintiff lives and that she knows people from Ashville, naming specifically Plaintiff's step-brother.

13. In **March of 2016**, an inmate who had previously threatened Plaintiff (stating in detail that he would rape her, peform other sexual acts, and then kill her) was transferred from the Pell City jail to the Ashville jail, where Plaintiff was currently working. It was explained to Plaintiff that the reason for the transfer was because the inmate had threatened to spit on and beat up a white officer. Instead of locking the inmate down at his current facility, he was transferred to Plaintiff's location despite her complaints that he had threatened to do worse things to her than the white officer.

14. Again around **January 2017**, Plaintiff's personal information was shared with jail staff and inmates while Plaintiff was on medical leave. Upon her return from medical leave, Plaintiff was confronted with questions from inmates regarding specifics about her medical conditions.

15. On or around **May 2017**, while on vacation Plaintiff received a voicemail that when she returned to work she would be working second shift at the St. Clair County Jail in Ashville, Alabama. Plaintiff had previously been promised that she would be able to keep her shift. She explained she had an eleven year old daughter and could not work second shift. However, she was told she could stop complaining and stay on the second shift or take a demotion from supervisor to officer to move to the first shift. In contrast, Ashley Cain, white female, (hereinafter "Officer Cain") complained to Chief Watson with the same concerns regarding child care and was placed on first shift per her request.

16. Plaintiff was the target of discipline without proper investigation in **April, 2017,** when Officer Butts, white female, and Officer Kyle Palmer, white male, left a high profile inmate in a waiting area for seven hours and accused Plaintiff of responsibility. Plaintiff was called into Chief Watson's office, and Jail Administrator Paul Monk, white male, (hereinafter "Chief Monk") had disciplinary action papers for Plaintiff. Upon review, it was discovered that Officer Butts and Officer Palmer actually committed the offense, neither of whom received any discipline.

17. In or around **December 2018,** Officers Thompson and Adams instigated and gathered complaints against Plaintiff to have her removed while Plaintiff's superiors failed to acknowledge that these complaints were false. Officers encouraged inmates and other officers to file grievances against Plaintiff in efforts to have Plaintiff removed from her position.

18. On or around **December 2019,** Supervisor Farmer advised inmates to pursue Prison Rape Elimination Act (hereinafter refered to as "PREA") complaints against Plaintiff despite having records that the information in the complaints was false.

19. To the best of Plaintiff's recollection in late **2019**, Plaintiff's safety was also disregarded when Captain Smith allowed an inmate to go into the property room and remove items seized upon booking at the jail. This inmate, who had previously threatened Plaintiff, removed a knife from her belongings. Not only is this extremely dangerous to anyone in the facility, this is an offense that warrants discipline, if not termination, and Captain Smith received neither.

<u>DENIAL OF PROMOTIONS AND PAY INCREASES</u>

20. In **November 2014**, Captain Moss became very ill. Captain Moss retired in September 2015.  An acting Captain was not put in place during her medical

leave of absence for nearly a year even though Plaintiff did the majority of the work as Captain with no pay increase or official title at the same time she was also executing her own job duties.

21. By contrast in **August 2015**, Captain Wright had taken personal leave for only three months at which time Chief Nash requested an Acting Administrator be appointed. The County Commission approved that request, and Chief Nash appointed Amber Hamilton, white female, (hereinafter "Captain Hamilton") as Jail Administrative Captain or Acting Captain. Captain Hamilton was far less experienced than Plaintiff when she was appointed as Acting Captain, though Plaintiff was never appointed as Acting Captain during the nearly year long medical leave that Captain Moss took.

22. In **2016**, instead of promoting Plaintiff, who had been completing the previous Captains' duties while the position was vacant during Captain Moss' absence, Defendant Sheriff offered the position to a white male employee, John Kitchens, white male, (hereinafter "Captain Kitchens").

23. On or around **September 5, 2017**, Captain Smith was put on personal leave. When Plaintiff came to work that day, there was a memo stating Supervisor Farmer "was in charge." At the time that Supervisor Farmer was made

Acting Captain, she had only 10 years experience compared to Plaintiff's 18 years of experience.

24. In **June 2018,** Plaintiff applied for a position at the St. Clair County Juvenile Detention Center. However, she was passed over for someone who had no jail experience and was Chief Watson's wife, Peggy Watson, white female.

25. Again, on or around **May 2020**, Defendant Sheriff placed an unqualified white employee, Captain Hamilton, in the open Captain's position when Captain Smith retired, failing to again promote Plaintiff despite being the highest ranked and most qualified person for the position. Captain Hamilton was unqualified because she had been working at the administrative office for five years and became Captain with less than a year of being back in the jail. Her previous jail experience was limited to a commissary officer and her brief stint as Acting Captain in 2015.

## PROTECTED ACTIVITY

26. Plaintiff was called into the office around **2016** due to complaints from coworkers regarding her tone of voice and for expecting them to adhere closely to the rules. When asked why these complaints were occurring, Plaintiff expressed her concerns to Chief Nash and Captain Wright that she

was being targeted and treated differently because she is a strong Black woman. Nothing was done to address her concerns of discrimination, and in fact the insubordination and culture of disrespect and undermined authority continued and worsened.

27. After a supervisory meeting in **July 2018**, Chief Watson asked Plaintiff to stay after to discuss complaints from Plaintiff's coworkers including those regarding her tone of voice and asked her why everyone was so against her. With Captain Wright present, considering that her previous complaints of discrimination had gone unaddressed, Plaintiff repeatedly asked Watson, "Do you really want to know?" When Watson replied in the affirmative, she again expressed her concerns that she was being treated differently because she is a Black female. After this complaint, the discrimination worsened. This complaint again went uninvestigated, unaddressed, unremedied, and the discriminatory conduct continued and worsened.

28. In **July 2020**, Plaintiff met with Chief Monk, Captain Hamilton and Phillip Barnard, white male, (hereinafter "Sergeant Barnard") to discuss that the officers on Plaintiff's shift do not respect her and how these officers have stated that she is not their supervisor, and that they take their orders from Supervisor Gaston. Nothing was done to address these complaints. When

Plaintiff expressed to Chief Monk that she was being treated differently because she is a Black female, his response was, "So you're going to play the race card?" This complaint also went unaddressed, and the discrimination continued and worsened, to the point of termination. Supervisor Gaston was immediately made to be over Plaintiff in the chain of command as a result of this conversation.

<u>RETALIATORY TERMINATION</u>

29. On or around **August 7, 2020**, Noah Bruce, white male, (hereinafter "Officer Bruce") requested to be moved to third shift, and when Plaintiff spoke up that it would be great to be working with him, he replied, "I've heard the horror stories."

30. On or around **August 11, 2020,** Plaintiff was allegedly terminated for failure to follow firewatch protocols. Plaintiff was called into Chief Monk's office where Sergeant Barnard, Captain Kitchens, and Captain Hamilton were all present. In this meeting, Plaintiff was falsely accused of hiding keys without sufficient investigation.

31. Plaintiff was terminated under the pretext of failing to follow firewatch protocols. In fact, on the night in question, **August 10, 2020**, Daniel Sloan, white male, ("Officer Sloan"), Holly Hilton, white female, ("Officer

Hilton") and Amanda Catron, white female, ("Officer Catron") failed to follow orders in regards to firewatch duty and also failed to follow the supervisor's on duty, Plaintiff's, instructions without discipline or termination.

32. Plaintiff's employment with Defendant was terminated on the first offense. At the time of her shift on **August 10, 2020,** Plaintiff was not properly trained on the new firewatch procedures that were in place at the St. Clair County Jail in Ashville, Alabama, especially regarding the log or the firewatch book/sheet that she supposedly failed to follow.

## **TITLE VII EXHAUSTION OF ADMINISTRATIVE REMEDIES**

33. Plaintiff incorporates the foregoing allegations in the numbered paragraphs as if fully set forth herein.

34. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"), which provides relief against race and sex discrimination and retaliation.

35. Defendant employs fifteen (15) employees or more as required by Title VII.

36. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff filed her charge with the Equal Employment Opportunity Commission (the "EEOC") on September 18, 2020 (amended on May 4, 2021). Exhibit A. Agency has now issued a notice of right to sue on May 19, 2021, following its investigation of Plaintiff's claims. Exhibit B. Plaintiff now files her Complaint within 90 days of her receipt of said Notice, and has therefore exhausted all administrative remedies.

37. Plaintiff brings this suit within the applicable statute of limitations and presents facts of prior discriminatory acts to provide relevant background evidence of a pattern of discrimination against Plaintiff by Defendant.

## COUNT I
## RETALIATORY TERMINATION PURSUANT TO TITLE VII AND 42 U.S.C. § 1981

38. Plaintiff incorporates the foregoing allegations in the numbered paragraphs as if fully set forth herein.

39. The retaliation provisions of Title VII and 42 U.S.C. § 1981 as amended by Section 101 of the Civil Rights Act 1991 (hereinafter "1981") prohibit an employer from discriminating against an employee because of their opposition to unlawful employment practices or because of their participation in protected activity.

40. Plaintiff's Title VII and 1981 claim of retaliatory termination is brought against Defendant in his official capacity as Plaintiff's employer.

41. Prior to her termination in August 2020, and culminating in July 2020, Plaintiff engaged in protected activity by making repeated complaints to senior leadership that Defendant discriminated against her based on her race and gender.

42. But for Plaintiff engaging in protected activity, Plaintiff would not have been terminated.

43. Defendant's purported grounds for termination are false and knowingly pretextual, and do not constitute legitimate, non-discriminatory reasons for Plaintiff's termination.

44. As a result of Defendant's retaliatory actions, Plaintiff suffered economic and non-economic damages.

## COUNT II
## RETALIATORY HOSTILE ENVIRONMENT PURSUANT TO TITLE VII AND 42 U.S.C. § 1981

45. Plaintiff incorporates the foregoing allegations in the numbered paragraphs as if fully set forth herein.

46. Under 42 U.S.C. § 2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . .

because [s]he has opposed any practice made an unlawful employment practice" by Title VII.

47. Title VII prohibits the creation of a hostile work environment or harassment in retaliation for an employee's protected activity. *Monaghan v. Worldpay U.S. Inc.*, 955 F.3d 855, 862 (11th Cir. 2020) (recognizing a claim for retaliatory-hostile-environment claim).

48. Plaintiff brings this claim for retaliatory hostile environment a/k/a retaliatory harassment under both Title VII and 1981.[1]

49. Beginning in 2016 and continuing up to July 2020, Plaintiff complained to senior leadership officials that Defendant was discriminating against her based on her race and gender; and in retaliation for said protected activity, Defendant subjected her to a retaliatory hostile environment, i.e., continuous employment actions that would have dissuaded a reasonable person from engaging in protected activity.

50. Plaintiff has been retaliated against after engaging in protected activity when she expressed concerns of disparate treatment and discrimination to

---

[1] "Retaliation claims are also cognizable under 42 U.S.C. § 1981 and are analyzed under the same framework as Title VII claims. See CBOCS W., Inc. v. Humphries , 553 U.S. 442, 452–57, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) ; Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998)."
Gogel v. KIA Motors Mfg. of Ga., Inc., 967 F.3d 1121 (11th Cir. 2020).

the members in her chain of command which included Chief Watson, Captain Wright, Chief Nash, Captain Hamilton, Chief Monk, Sergeant Barnard, and Captain Kitchens.

51. Defendant's retaliatory actions against Plaintiff included but are not limited to the following: denial of promotions and pay increases for which Plaintiff was qualified; deliberately exposing Plaintiff to unsafe, threatening working conditions; unfavorable scheduling of her shifts; instigating unjustified complaints from coworkers regarding Plaintiff; selective enforcement of disciplinary rules to Plaintiff's detriment, and a persistent refusal to correct or remedy the discrimination Plaintiff reported.

52. Defendant was aware of Plaintiff's protected activity but disregarded her concerns and allowed the harassment to continue.

53. Upon information and belief, other employees were discouraged from making complaints regarding discrimination based on the retaliatory treatment towards Plaintiff resulting in the creation of a hostile work environment.

54. As a result of the willful actions of the Defendant and its agents, and as a proximate cause thereof, Plaintiff has been subjected to a retaliatory hostile

work environment meant to dissuade her and other employees from complaining of discrimination.

## COUNT III
## DISPARATE TREATMENT PURSUANT TO 42 U.S.C. § 1981

55. Plaintiff incorporates the foregoing allegations in the numbered paragraphs as if fully set forth herein.

56. 1981 also prohibits prohibits "all racial discrimination in the making and enforcement of contract" to include intentional discrimintaton as it pertains to the terms and conditons of employment.

57. Plaintiff's 1981 claim of intentional race discrimination is brought against Defendant in his official capacity as Plaintiff's employer.

58. Plaintiff brings this suit within the applicable statute of limitations under 1981 and presents facts of prior discriminatory acts to provide relevant background evidence of a pattern of discrimination against Plaintiff by Defendant.

59. During a period of between 2016 and the filing of the Complaint, Defendant subjected Plaintiff to ongoing discriminatory treatment based on her race. Defendant's racially discriminatory conduct included but was not limited to a denial of promotions and pay increases extended to less qualified white

candidates and selective enforcement of disciplinary rules in circumstances where white officers were not disciplined.

60. Defendant disregarded its policy and Plaintiff's seniority, experience and qualifications when it failed to promote her as the most experienced and qualified candidate for several Captain or Acting Captain positions.

61. Defendant intentionally discriminated against Plaintiff on the basis of her race when Defendant failed to administer appropriate disciplinary actions to white employees for the same situations for which Defendant accused and proposed discipline for Plaintiff.

62. Defendant intentionally discriminated against Plaintiff by allowing or directing its agents and officers to subject her to mistreatment to which white employees were not subjected, including derogatory language towards her, instigation of false and unwarranted complaints, and other behavior designed to diminish and marginalize Plaintiff's standing at work.

63. The above facts support the conclusion that Defendant intentionally discriminated against Plaintiff on the basis of her race by allowing her to be targeted by her superiors and coworkers and further allowing racially discriminatory situations in the workplace to continue and go unremedied.

64. The above facts also support the conclusion that Defendant harbors racial animus and therefore would not have terminated Plaintiff but for the fact that she is Black. *See Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739, 207 L. Ed. 2d 218 (2020)(explaining "but for" causation and that an event may have many "but-for causes").

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

(a) Injunctive relief requiring Defendant to reinstate her with no interruption in service, or, in the alternative, front pay;

(b) Back pay from the date of her removal and for the raises she should have received;

(c) Compensatory damages, including for pain and emotional distress;

(d) Punitive damages, to deter such conduct in the future;

(e) Injunctive relief;

(f) Pre- and Post-judgment interest at the maximum rates allowable by law;

(g) Special damages for all out-of-pocket costs and expenses, including attorneys' fees; and

(h) Such other legal or equitable relief to which Plaintiff may be entitled.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.

_Joretha Mitchell_
Joretha Mitchell

State of Alabama                    )
County of Jefferson                 )

I, the undersigned a Notary Public in and for said County and State, hereby certify that Joretha Mitchell, whose name is signed to the foregoing instrument, did swear to and ascribe as true contents of the Complaint before me on this day that, being informed of the contents of the instrument, executed the same voluntarily on the day that same bears date.

Given under my hand this the  22nd day of April 2022.

_Laura K. Miller_
Notary Public
Commission Expires: _02/04/2025_

Respectfully submitted,

_/s/ Lauren H. Shine_
Lauren H. Shine
Attorney for Plaintiff
SHINE LAW FIRM, LLC
PO Box 13877
Birmingham, AL 35202

shinelawal@gmail.com
(205) 847-4804

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of April, 2022, a true and correct copy of the foregoing has been served via the Court's CM/ECF filing system upon counsel of record as follows:

Ashley H. Freeman, Esq.
C. Richard Hill, Jr., Esq.
ashley.freeman@chlaw.com
rick.hill@chlaw.com
CAPELL & HOWARD, P.C.
150 South Perry Street
P.O. Box 2069
Montgomery, AL 36102

/s/ Lauren H. Shine
Of Counsel

*EXHIBIT A*

Plaintiff Exhibit A

EEOC Form 5 (5/01)  AMENDED

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented to:  Agency(ies) Charge No(s):<br>___ FEPA<br>_X_ EEOC |
|---|---|

Office of the Sheriff St. Clair County ___ and EEOC
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*)<br>Ms. Joretha Mitchell | 256-282-0252 | Date of Birth<br>06/26/1960 |
|---|---|---|

| Street Address<br>PO Box 513 | City, State and ZIP Code<br>Ragland, AL   35131 |
|---|---|

| Name<br><br>Office of the Sheriff St. Clair County | No. Employees,<br>Members<br>15+ | Phone No. (Include Area Code)<br>1-205-594-2140 |
|---|---|---|

| Street Address<br>48 6th Street, Suite 300 | City, State and ZIP Code<br>Ashville, AL 35953 |
|---|---|

| DISCRIMINATION BASED ON (*Check appropriate box(es).*)<br><br>_X_ RACE  __ COLOR  _X_ SEX  __ RELIGION<br>NATIONAL ORIGIN<br><br>X RETALIATION  X AGE  __ DISABILITY  __ OTHER<br>(Specify below.) | DATE(S) TOOK PLACE<br>Earliest          Latest<br>2017          August 20, 2020<br><br>__ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):
I have been treated differently on the basis of sex and race since 2017. Most recently, on August 17, 2020, I was responsible for assigning fire watch at the Ashville Jail and was quarantined to the control tower due to health risks. I assigned Hilton for fire watch, who encountered a nose bleed during her shift and asked a coworker to cover her. I asked her to get back on her post. The next day I was called into the chief's office and blamed for missing keys, which I had nothing to do with. I was also shown a fire watch log for the first time, which no one had ever shown or told me about before. Discipline procedures are progresseive: first is written verbal, followed by written discipline, followed by suspension, and the final and 4th step is termination. Instead of following this, I was falsely accused of not covering the fire watch properly and hiding keys and fired on August 20, 2020. I followed the orders given to me while on shift and executed my duties according to protocol and policy, but was falsely set up and accused of misconduct. My coworker verified that she overheard my other coworkers setting me up and lying on me just prior to my termination. I was discriminated against based on sex and race and retaliation for exercising my rights by reporting disparate treatment.

1

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>_05/04/2021_  _Coretta Mitchell_<br>Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br>_05/04/2021_<br>My commission expires _3/4/22_ |

LAUREN SHINE
NOTARY
PUBLIC
ALABAMA STATE AT LARGE

*EXHIBIT B*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22ⁿᵈ Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 651-7020
FAX (205) 212-2105
Website: www.eeoc.gov

EEOC Charge No. 420-2020-03133

Joretha Mitchell                                 Charging Party
P.O. Box 513
Ragland, AL 35131

St. Clair County Jail                            Respondent
St. Clair County Commission
c/o Ashley Freeman, Esquire
Capell & Howard, P.C.
150 S. Perry Street
Montgomery, AL 36104

### NOTICE OF CHARGE AMENDMENT AND
### REVOCATION AND REISSUANCE OF NOTICE OF RIGHT TO SUE

In accordance with § 1601.12(b) of the EEOC's Procedural Regulations the subject charge of discrimination is amended to correct and add proper Respondent "St. Clair County Sheriff." As a result of the amendment, the Dismissal and Notice of Rights (Notice) issued on April 29, 2021 is hereby revoked. The amended charge and revised Notice to correct Respondent and nature of dismissal is enclosed. If you have any questions or require additional information, please contact Enforcement Manager Eless Brown at eless.brown@eeoc.gov or by telephone at (205) 651-7023.

On Behalf of the Commission:

Digitally signed by
Bradley A. Anderson
Date: 2021.05.18
13:16:38 -05'00'

**MAY 1 9 2021**
Date                                             Bradley A. Anderson
                                                 District Director

Enclosures

cc:   Lauren H. Shine, Esquire
      Shine Law Firm, LLC
      P.O. Box 13877
      Birmingham, AL 35266

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 – in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

*RECEIVED BY EEOC/BIDO MAY 5, 2021/jkl*

AMENDED *to correct Respondent*

| | |
|---|---|
| EEOC Form 5 (5/01) | |

| CHARGE OF DISCRIMINATION | Charge Presented to:    Agency(ies) Charge No(s): |
|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | **AMENDED** |

__ FEPA
_X_ EEOC **420-2020-03133**

Office of the Sheriff St. Clair County ___ and EEOC
*State or local Agency, if any*

| Name (*Indicate Mr. Ms. Mrs.*)<br>Ms. Joretha Mitchell | 256-282-0252 | Date of Birth<br>06/26/1960 |
|---|---|---|

| Street Address<br>PO Box 513 | City, State and ZIP Code<br>Ragland, AL   35131 | |
|---|---|---|

| Name<br>**Office of the Sheriff St. Clair County** | No. Employees, Members<br>15+ | Phone No. (Include Area Code)<br>1-205-594-2140 |
|---|---|---|

| Street Address<br>48 6th Street, Suite 300 | City, State and ZIP Code<br>Ashville, AL 35953 |
|---|---|

| DISCRIMINATION BASED ON (*Check appropriate box(es).*)<br><br>_X_ RACE  __ COLOR  _X_ SEX  __ RELIGION  __ NATIONAL ORIGIN<br><br>_X_ RETALIATION  _X_ AGE  __ DISABILITY  __ OTHER (*Specify below.*) | DATE(S) TOOK PLACE<br>Earliest           Latest<br>2017              August 20, 2020<br><br>__ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):
I have been treated differently on the basis of sex and race since 2017.  Most recently, on August 17, 2020, I was responsible for assigning fire watch at the Ashville Jail and was quarantined to the control tower due to health risks.  I assigned Hilton for fire watch, who encountered a nose bleed during her shift and asked a coworker to cover her.  I asked her to get back on her post.  The next day I was called into the chief's office and blamed for missing keys, which I had nothing to do with.  I was also shown a fire watch log for the first time, which no one had ever shown or told me about before. Discipline procedures are progresseive: first is written verbal, followed by written discipline, followed by suspension, and the final and 4th step is termination. Instead of following this, I was falsely accused of not covering the fire watch properly and hiding keys and fired on August 20, 2020.  I followed the orders given to me while on shift and executed my duties according to protocol and policy, but was falsely set up and accused of misconduct.  My coworker verified that she overheard my other coworkers setting me up and lying on me just prior to my termination.  I was discriminated against based on sex and race and retaliation for exercising my rights by reporting disparate treatment.

1

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>05/04/2021  *[signature]*<br>Date    Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*[signature]*<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br>05/04/2021<br>My commission expires 3/4/22 |

*[Notary seal: LAUREN SHINE NOTARY PUBLIC ALABAMA STATE AT LARGE]*